UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

GORDON ROSS HENDERSON,

    Plaintiff,

    v.

JASON BETTS, *et al.*,

    Defendants.

Case No. C09-1156RSL

ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

## I. INTRODUCTION

This matter comes before the Court on a motion for summary judgment filed by plaintiff and on cross motions for summary judgment filed by defendants. Plaintiff, who is proceeding *pro se*, has brought a claim under 42 U.S.C. § 1983 alleging that defendants violated his rights under the Fourth, Fifth, and Eighth Amendments to the Constitution by arresting him without probable cause, using excessive force, and denying him medical treatment while he was in jail, among other things.

## II. DISCUSSION

**A.    Background Facts.**

On August 16, 2008, Washington State Trooper Jason Betts stopped plaintiff for

ORDER GRANTING DEFENDANTS'
MOTIONS FOR SUMMARY JUDGMENT - 1

driving without a seat belt.  Plaintiff contends that he told Trooper Betts that he was medically excused from wearing a seat belt and showed him a note from a physician to that effect.  When asked for his driver's license, plaintiff produced a copy of a driver's permit from a foreign country.  At that point, Trooper Betts informed plaintiff that he was under arrest and requested that plaintiff exit the vehicle.  Plaintiff refused to comply until Trooper Betts issued a third demand to do so.  Amended Complaint at p. 3.  According to plaintiff, during the ensuring arrest, Trooper Betts forced plaintiff onto the ground and dragged his face "back and forth across the asphalt."  Amended Complaint at p. 3.  Trooper Betts called for backup and two Mount Vernon police offers were dispatched.  At some point, plaintiff looked up and saw them.  After Trooper Betts arrested plaintiff, he subsequently searched him and his vehicle, then took him to jail.

Plaintiff's amended complaint identities defendants Tobol and Coley as Washington State Troopers.  Plaintiff alleges that both appeared at the scene after his arrest "claiming to be with internal affairs."  Amended Complaint at pp. 3, 5.

Plaintiff has also named as defendants John Batiste, Chief of the Washington State Patrol, and Liz Luce, Director of the Washington State Department of Licensing. Plaintiff contends that Batiste "refused to deliver anything" in response to plaintiff's request for evidence for his state court trial and was the "instigator to denying Risk Management for this crime without merit."  Amended Complaint at p. 5.  As for defendant Luce, plaintiff contends that she has refused to correct records to show that plaintiff's license has been "rescinded," as he contends, rather than "suspended."  Amended Complaint at p. 6.

After he was arrested, plaintiff was seen and treated by paramedics on his way to the Skagit County Jail.  Declaration of Gary Shand, (Dkt. #44) ("Shand Decl.") at p. 3.

ORDER GRANTING DEFENDANTS'
MOTIONS FOR SUMMARY JUDGMENT - 2

1  When he arrived at the jail, he informed an unnamed nurse that he was diabetic and needed his medication. Henderson Dep. at p. 102. Plaintiff was unable to identify the type or dosage of his medication. Although Mary Hoffman, a woman who lives with plaintiff, was contacted, she refused to bring his medication to the jail. Shand Decl. at p. 3. Just after 9:00 a.m. the next day, which was Sunday, District Court Judge David Svaren visited the jail to process releases. He offered to release plaintiff, but plaintiff refused to allow personnel to take his fingerprints or photograph as required of all prisoners. Id. at p. 4; id., Ex. A. Based on that refusal, plaintiff was not released.

Later that day, plaintiff submitted a sick call "kite." Because the jail does not offer sick call on Sunday, the ranking officer at the jail determines whether to grant emergency care. Shand Decl., Ex. B. It was determined that emergency care was not needed; plaintiff's kite stated, "Back feels out of place large bumps on one side and feels painful! Would of thought was done during time of arrest!" Id.

When defendant Nancy Sather, R.N., a part-time clinical nurse working at the Skagit County Jail, arrived at work Sunday morning, she contacted Hoffman, who informed Sather that plaintiff was taking 5mg of Glyburide for his diabetes. Declaration of Nancy Sather, R.N., (Dkt. #45) at p. 2. Sather telephoned the on-call physician for Skagit County, Dr. Guilford Traylor, who approved ordering the medication from the only local pharmacy open on a Sunday. When Sather contacted that pharmacy, however, she learned that they were out of Glyburide. She then called Dr. Traylor again, who "opined that a diabetic with that low a dosage of oral diabetic medication could get by without it until the next morning when the medication would be available through the jail's regular source." Id. at pp. 2-3. Dr. Traylor instructed Sather to order the medication the following morning. By that time, plaintiff had already been released.

ORDER GRANTING DEFENDANTS'
MOTIONS FOR SUMMARY JUDGMENT - 3

**B.     Summary Judgment Standard and Evidentiary Issue.**

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, the records show that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to designate, by affidavits, depositions, answers to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial." Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).

All reasonable inferences supported by the evidence are to be drawn in favor of the nonmoving party.  See Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002).  "[I]f a rational trier of fact might resolve the issues in favor of the nonmoving party, summary judgment must be denied." T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 631 (9th Cir. 1987).  "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient." Triton Energy Corp. v. Square D Co., 68 F.3d 1216, 1221 (9th Cir. 1995).  "[S]ummary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable jury could return a verdict in its favor." Id. at 1221.

In his motion, plaintiff contends that defendants objected to his discovery requests as overly broad and refused to provide any responsive information.  Those requests, however, were not directed to all defendants.  Supplemental Declaration of Steven Thorsrud, (Dkt. #49) at ¶ 2, Ex. 7 (requests were specifically directed to the state defendants and Skagit County defendants).  Plaintiff never moved to compel nor followed up on the requests.  Moreover, plaintiff has filed for summary judgment and has not alleged that he has insufficient information to do so or to respond to defendants' cross

ORDER GRANTING DEFENDANTS'
MOTIONS FOR SUMMARY JUDGMENT - 4

motions. Accordingly, plaintiff's vague allegation does not justify a delay in ruling on the pending motions.

**C.      Analysis of Allegations Against the State Defendants.**

Plaintiff has sued Jason Betts, Brandon Tobol,[1] Timothy Coley, John Batiste, and Liz Luce (collectively, the "state defendants"). As an initial matter, the Court notes that after plaintiff responded to the state defendants' motion for summary judgment, he filed another memorandum arguing that the motion should be denied. That memorandum was filed two weeks after the noting date for the motion, and was untimely even if it were otherwise a proper sur-reply. It also contained additional allegations and did not seek to strike any material in the state defendants' reply. Accordingly, the supplemental response (Dkt. #67) was improperly filed and was not considered.

Section 1983 provides a method for individuals to sue based on alleged violations of their constitutional rights. A claim under that section requires, among other elements, that the violation was committed by a "person" acting under color of state law. Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989). However, "a state and its officials sued in their official capacity are not considered 'persons' within the meaning of *§ 1983*, due to the sovereign immunity generally afforded states by the *Eleventh Amendment*." Cortez v. County of Los Angeles, 294 F.3d 1186, 1188 (9th Cir. 2002) (citing Will, 491 U.S. at 70-71).

In this case, plaintiff alleges claims against the state defendants in their "official capacity." Plaintiff's Reply at p. 2; Amended Complaint. He has not alleged that they

---

[1] In his amended complaint, plaintiff identified "Cpl. Tobal." The Court will refer to that defendant as Brandon Tobol, which the state defendants note is the correct spelling of his name.

ORDER GRANTING DEFENDANTS'
MOTIONS FOR SUMMARY JUDGMENT - 5

were acting on behalf of any government entity other than the state. Accordingly, plaintiff's claims against the state defendants are dismissed based on the sovereign immunity granted by Eleventh Amendment. Because the Court finds that dismissal is appropriate on that basis, it need not consider the state defendants' other asserted reasons for dismissal.

**D.     Analysis of Claims Against the Mount Vernon Defendants.**

The Mount Vernon defendants include Police Chief Ken Bergsma, Officer Keith Johnston, and Officer Brandon Young. As with the state defendants' motion for summary judgment, plaintiff improperly filed documents after the close of briefing. After filing a response to defendants' motion and after the noting date for the motion had already passed, he filed two additional memorandum opposing the Mount Vernon defendants' motion for summary judgment. In addition to being untimely, neither was aimed at striking material in the reply, and the documents were not proper sur-replies. Accordingly, the Court did not consider the belatedly filed documents (Dkt. ##64, 66). The Court, however, did consider plaintiff's response to the Mount Vernon defendants' motion for summary judgment, even though it was filed one week late, because plaintiff is proceeding *pro se*.

Plaintiff contends that when Officers Young and Johnson arrived at the scene of his arrest, they should have stopped Trooper Betts from "assaulting" plaintiff. To establish a failure to intervene in a constitutional violation, plaintiff must show that the officers had knowledge that such a violation was occurring and an opportunity to intervene and prevent injury. See, e.g., Randal v. Prince Georges Co., Maryland, 302 F.3d 188 (4th Cir. 2002). Plaintiff, however has been unable to identify when the Mount Vernon officers arrived at the scene or what they actually witnessed. In his affidavit filed

ORDER GRANTING DEFENDANTS'
MOTIONS FOR SUMMARY JUDGMENT - 6

1  in support of his motion for summary judgment, he contends that Trooper Betts slammed
2  him to the ground, kneed him in the back, and dragged his head across the asphalt.
3  Plaintiff's Affidavit, (Dkt. #35) at pp. 1-2.  He then states that when he "looked up [he]
4  saw two Mount Vernon Police officers" watching and doing nothing.  Id. at p. 2;
5  Henderson Dep. at pp. 91-92.  He did not see the Mount Vernon officers before he went
6  to the ground.  Henderson Dep. at p. 91.  Plaintiff also does not know when they arrived.
7  Id. at p. 93 ("Well, I don't know how long they were there.  When I was on the ground, I
8  didn't see them.").[2]  Consistent with plaintiff's version of events, the Mount Vernon
9  officers contend that by the time they arrived, plaintiff was already on the ground and
10 being handcuffed.  They did not observe Officer Betts using force against plaintiff, and
11 his face was not in contact with the road.  Supplemental Declaration of Officer Johnston,
12 (Dkt. #60) at pp. 1-2; Supplemental Declaration of Officer Young, (Dkt. #59) at pp. 1-2.
13 Nor did they participate in any search of plaintiff or his vehicle.  Supplemental
14 Declaration of Officer Johnston at p. 2; Supplemental Declaration of Officer Young at p.
15 2.  Therefore, plaintiff has failed to establish that the Mount Vernon defendants witnessed
16 a constitutional violation or had any opportunity to stop it.

17    Plaintiff has also sued Mount Vernon Police Chief Ken Bergsma for failing to
18 discipline Officers Young and Johnston.  Because those officers did not commit any
19 violation, the related claim based on a failure to discipline them fails.  Moreover, liability

---

[2] Although plaintiff's reply memorandum is difficult to follow and contains contradictory assertions, at one point he contends that the Mount Vernon officers saw Trooper Betts allegedly drag his face across the asphalt.  Reply at p. 3.  Plaintiff cannot contradict his own deposition testimony with a later filed self-serving reply.  See, e.g., Block v. City of Los Angeles, 253 F.3d 410, 419 n.2 (9th Cir. 2001) (explaining that a party cannot create an issue of fact by submitting a declaration contradicting his or her own earlier version of the facts).

ORDER GRANTING DEFENDANTS'
MOTIONS FOR SUMMARY JUDGMENT - 7

under Section 1983 arises because of personal participation in the violation by the defendant. See, e.g., Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (explaining that there is no respondeat superior liability under Section 1983). "A supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them." Id. In this case, there is no evidence of any such conduct. Accordingly, plaintiff's motion for summary judgment against the Mount Vernon defendants is denied and their cross motion is granted.

**E.     Analysis of Claims Against the Skagit County Defendants.**

Plaintiff asserts a claim for failure to provide medical care against defendant Shand, the Chief Corrections Deputy of Skagit County Jail. Because plaintiff had not been convicted of a crime but had only been arrested, his rights derive from the due process clause rather than the Eighth Amendment's protection against cruel and unusual punishment. See, e.g., Gibson v. County of Washoe, 290 F.3d 1175, 1187 (9th Cir. 2002). Despite the differing sources of rights, they impose essentially the same duty: "persons in custody have the established right to not have officials remain deliberately indifferent to their serious medical needs." Id. (internal citation and quotation omitted). Under that standard, a person is liable for denying medical care only if he or she "'knows of and disregards an excessive risk to inmate health and safety.'" Id. (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)).

Plaintiff concedes that defendant Shand was not present while he was in the jail. Shand Decl. at p. 4. He does not allege that Shand was aware of any violation of his rights or had an opportunity to prevent it. Instead, he contends that Shand is responsible because "it is his responsibility to see that the jail is run properly." Plaintiff's Reply at p.

ORDER GRANTING DEFENDANTS'
MOTIONS FOR SUMMARY JUDGMENT - 8

2. As noted above, Section 1983 does not provide a cause of action based on a respondeat superior theory. See, e.g., Monell v. Dep't of Social Services of City of New York, 436 U.S. 658, 691-94 (1978); Taylor, 880 F.2d at 1045.  Moreover, because plaintiff has alleged a denial of medical care, he must show that defendant was "subjectively aware that serious harm is likely to result from a failure to provide medical care." Gibson, 290 F.3d at 1993.  Plaintiff's claim against Shand fails because Shand neither participated in the violation nor had any knowledge that plaintiff was denied medical care during the relevant time.

Similarly, plaintiff fails to allege that defendant Pam Springer, the Clerk of the Skagit County District Court, personally participated in or was aware of the deprivation of his rights.  That alone is sufficient to doom his claim against her.  Rather, he alleges that an unidentified "girl" told him that he would have to pay an appeal fee and copying charges.  However, he does not allege that he ever actually paid those charges, and his appeal was nevertheless processed.  Henderson Dep. at pp. 123-26.  Accordingly, plaintiff's claim against Springer also fails for failure to allege any harm.

Plaintiff also alleges that Sather is liable for failing to provide him with medical care.  Plaintiff contends that Sather, identified as "Jane Doe" in his amended complaint, refused to allow him to see a doctor when he arrived at the jail, even though he allegedly had difficulty walking, and denied him medication during his stay there.  However, Sather was not at the jail when plaintiff arrived on Saturday, August 16, 2008 at 8:30 p.m.; she had already left for the evening.  Sather Decl. at pp. 1-2.  She is therefore not responsible for any failure to give care when he arrived.  Moreover, Sather was not aware of any complaints plaintiff made about alleged bodily injury until she read the kite he filed for Monday sick call, but by then, he had already been released from the jail.  Id. at p. 3.  In

1  addition, Sather made two attempts to obtain plaintiff's diabetes medication, and when
2  those attempts failed, she was told by a physician that harm would not result if plaintiff
3  waited until Monday morning to receive it.  Based on those facts, Sather was not aware
4  that plaintiff was likely to suffer serious harm if denied medical care.  Gibson, 290 F.3d at
5  1993.

6  In his reply memorandum, plaintiff alleges that Dr. Traylor failed to provide him
7  with medical care and "should be removed from the jail employ."  Reply at p. 3.  Dr.
8  Traylor is not named as a defendant in plaintiff's original complaint or in his amended
9  complaint.  Instead, in February 2010, plaintiff moved to amend his complaint to add Dr.
10 Traylor as a defendant.  The Court granted the motion, and stated, "Plaintiff may file his
11 amended complaint in the docket within ten days of the date of this order.  The amended
12 complaint, if filed, will supercede the original complaint in all respects."  (Dkt. #34).
13 Despite that clear statement, plaintiff never filed an amended complaint that included
14 allegations against Dr. Traylor.  Accordingly, Dr. Traylor is not a defendant in this case.
15 Nor has plaintiff moved for summary judgment on any claim against him.  In fact,
16 plaintiff's motion for summary judgment never mentions Dr. Traylor.  The Court will not
17 consider the belated allegations against him.[3]  Accordingly, plaintiff's motion for
18 summary judgment against the Skagit County defendants is denied.

---

[3] Even if the Court were to consider the un-alleged claim, it would fail as a matter of law.  Plaintiff disagrees with Dr. Traylor's conclusion that the deprivation of his medication over the weekend would not result in harm and claims that his condition has since deteriorated as a result.  However, other than his own assertion, he has not provided any evidence to support that claim.  Plaintiff is not a physician, and his disagreement with Dr. Traylor's assessment lacks foundation and is legally insufficient.  See, e.g., Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004) (explaining that a difference of medical opinion is insufficient to establish deliberate indifference).

ORDER GRANTING DEFENDANTS'
MOTIONS FOR SUMMARY JUDGMENT - 10

Although the Skagit County defendants did not explicitly cross move for summary judgment, they requested dismissal of plaintiff's claims in their response to his motion. That request was sufficient to provide notice to plaintiff, and he had an opportunity to respond in his reply memorandum and he did so. Moreover, the Court can *sua sponte* grant summary judgment to a non-moving party where, as here, there is no genuine issue of material fact and "the case cannot be proved if a trial should be held." Cool Fuel, Inc. v. Connett, 685 F.2d 309, 311 (9th Cir. 1982) (citing cases). As set forth above, plaintiff's claims against the Skagit County defendants are untenable, so they are entitled to summary judgment in their favor.

### III. CONCLUSION

For all of the foregoing reasons, the Court GRANTS the state defendants' motion for summary judgment (Dkt. #51), GRANTS the Mount Vernon defendants' motion for summary judgment (Dkt. #36), GRANTS summary judgment in favor of the Skagit County defendants, and DENIES plaintiff's motion for summary judgment (Dkt. #35). The Clerk of the Court is requested to enter judgment in favor of defendants and against plaintiff.

DATED this 6th day of July, 2010.

Robert S. Lasnik
United States District Judge